O’BRIEN, J.
—The complaint alleges two causes of action upon two promissory notes, each for $2,500, made by the defendant corporation to the order of George H. Treadwell, and indorsed by him. The single defense set up is that the corporation did not make the notes. .Upon the first trial the complaint was dismissed, and the judgment entered upon such dismissal was subsequently *456 by the general term reversed, upon the ground that “ whether the-president was authorized to make the notes should have been submitted to the jury.” As said in the opinion of the court:
“ The inherent power of the defendant corporation to bind itself by promissory notes was not questioned on the trial. The-sole question litigated at circuit was whether the president of the defendant had authority to bind it by these promissory notes.”
Upon additional evidence, the inquiry must now be as to whether the same question should have been submitted to the-jury, or whether the court was right in holding, as matter of law, that such authority was shown, and that a direction of a verdict, for the plaintiff was therefore proper. It is now made to appear that George H. Treadwell was the founder of the company, and, prior to its incorporation in 1892, had been engaged as a fur-manufacturer and dealer in Albany for years. Upon its incorporation, he became its president and general manager, and in either capacity seems to have taken upon himself the entire management of the business, manufacturing and financial. In the summer of 1898, during the financial distress, the company became in need of funds, which was known to the directors of the corporation. In December, 1892, and the summer of 1893, the company delivered $20,000 of notes, just like the ones in suit, to the firm of Hotchkiss & Oo.,'-brokers, for discount, and the latter firm sent the company $15,000, which went into its treasury, and was used by it in. its business. Treadwell testified that there were still other notes,, signed in the same way, and paid by the company, adding:
“It is true that, in December, 1892, and in' the winter of 1892r I was raising money for the needs of the manufacturing business of the company at Albany. I raised some by the signing, and sale and discount, of notes given by me, in the same manner that the notes in suit were given, and some by acceptances of the company. * * * I cannot say that the other officers of the company knew the method in which the manufacturing business was-conducted at Albany. I cannot be responsible for what they knew or what they didn’t know. The company manufactured fur and the moneys thus raised were used in the carrying on of the business. I think the other directors knew of the making of those notes. I can hardly give my reasons for that. They knew that-the money was being raised; and they knew it was being raised by me in some way, and they were doing anything at all to help the company. They we,re willing to let me do it, and they raised, no objection to the manner in whichl was doing it.
It was their business to know about it. They were directors and officers, and the same as I was. They saw the books of the company. The accounts were correctly kept. The moneys raised on those notes which I signed were entered in the books of the company, and the books were open to the inspection of the officers of the company.”
The evidence of this witness, upon whom the defense mainly relied, leaves no contrary inferences to be drawn, as it all points to, and tends to support, the view that, so far as third parties were concerned in dealing with the notes of this company, signed as *457 they were, they had a right to conclude that they were authorized by the company. Other testimony besides this might be referred to as tending to show that the burden of raising money for the company by means of notes was placed upon George H. Tread-well as president and manager, and that he issued notes which were signed exactly as the ones in suit, and that, upon such notes, moneys were realized, which went into the treasury of the-company, and were used in its business, if not by the direct authoriziation, or with knowledge, at least with the acquiescence, of the other directors. There was no question but that Mr. Treadwell acted honestly and in good faith in his dealings 'with Hotchkiss- & Co., in his efforts to raise money for the company. The notes, therefore, had their inception honestly. They were put out for a worthy and necessary purpose. Nor is any defense made that the-bank was not a bona fide holder of the notes for value. The evidence shows that the bank advanced, by way of loan to Hotchkiss & Co., the sum of $10,000, and received therefor, as collateral security, among others, notes of the Treadwell Company, for which; when the latter became due, the notes in suit were substituted.
The only fact appearing to impair the force and effect of the-evidence adduced to show the authority of Mr. Treadwell torn alee the notes was á provision of the by-laws that “the treasurer, together with the president or the secretary, shall accept and indorse drafts, and sign promissory notes of the company.” In commenting upon these by-laws, which prescribed the power of the president and treasurer, and the argument, based thereon, that the note, not having been signed by the treasures, is not binding upon the company, the court, upon,the former appeal, said:
“In National Spraker Bank v. George C. Treadwell Co., 80 Hun, 363; 61 St. Rep. 817, it was held that the fact that a promissory note was not signed by the defendant’s treasurer, in accordance with the by-laws, constitutes no defense to an action on &. note in the hands of a bona fide holder, the corporation having received the benefit of the proceeds.”
The trial judge, in stating his reasons for a direction, correctly said:
“I assume that the president of the company, Mr. Treadwell, bad no direct authority, as such, under the by-laws, to made promissory notes binding the company, and that, by the restrictive provisions of those by-laws, obligations of the company might only be executed in a certain way. That would not render a promissory note signed in the way in which this was, and delivered under the circumstances under which the notes were delivered, of no force as against this corporation, if it is made to appear in the case that the conduct of the corporation was such,with reference to the acts of the president m similar matters, as to produce a well-founded belief that he was authorized to make promissory notes-of this character.”
This statement of the law is followed by a summary of the facts-proven in the case, which leaves nothing to be added by us, and. *458 which, in our opinion, justified the ruling made, directing a verdict for the plaintiff.
We think the judgment was right, and should be affirmed, with ■costs.
All concur.